**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **OSCAR WALDEN, JR.** | ) | |
| | ) | **No. 04 C 47** |
| **vs.** | ) | **Honorable Ruben Castillo** |
| | ) | |
| **CITY OF CHICAGO, et al.** | ) | |

## INTERVENORS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS

THEODORE POULOS
Cotsirilos, Tighe, Streicker, Poulos & Campbell, Ltd.
33 N. Dearborn St., Suite 600
Chicago, IL 60602
(312) 263-0345

WILLIAM J. MARTIN
William J. Martin Ltd.
1011 Lake St., Suite 314
Oak Park, IL 60301
(708) 848-2100

MARC W. MARTIN
Marc Martin, Ltd.
53 W. Jackson Blvd., Suite 1420
Chicago, IL 60604
(312) 408-1111

*Attorneys for Intervenors Andrew Hale and Avi Kamionski*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

GENERAL LEGAL STANDARDS ................................................................................1

    A.    28 U.S.C. § 1927 .........................................................................................1

    B.    Inherent powers ............................................................................................3

ARGUMENT ...................................................................................................................3

I.    Incidents Precipitating the Grant of a New Trial .................................................4

    A.    Distribution of unredacted confession to the jury ......................................4

    B.    Opening statement .......................................................................................6

    C.    Cross-examination questions .....................................................................8

    D.    Closing arguments .......................................................................................9

II.    Matters Unrelated to New Trial Grant ..............................................................12

    A.    Expression of Frustration ..........................................................................12

    B.    Post-verdict disclosure of George Ryan's deposition ..............................13

III.    Other Cases .......................................................................................................14

IV.    The Requested Attorneys' Fees Amount is Unjustified and Excessive .............18

CONCLUSION..............................................................................................................19

i

## **TABLE OF AUTHORITIES**

### **Cases**

*Bat v. A.G. Edwards & Sons, Inc.*, 2007 WL 2320539 (D. Colo. 2007) ...................................... 19

*Burull v. First National Bank of Minneapolis*, 831 F.2d 788 (8th Cir. 1987) ............................... 8

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ................................................................................ 3

*Corley v. Rosewood Care Center, Inc.,* 368 F.3d 990 (7th Cir. 2004) ................................... 2, 3, 7

*Dal Pozzo v. Basic Machinery Co., Inc.,* 463 F.3d 609 (7th Cir. 2006) .................................... 2, 3

*Dowe v. National Railroad Passenger Corp.*, 2004 WL 1393603 (N.D. Ill. 2004) ................... 19

*Fahey v. Creo Products, Inc.*, 1998 WL 474114 (N.D. Ill. 1998) .................................................. 2

*FM Industries, Inc. v. Citicorp Credit Services, Inc.*, 614 F.3d 335 (7th Cir. 2010) ................... 14

*Hanrahan v. Hampton,* 446 U.S. 754 (1980) ................................................................................ 18

*Holmes v. City of Massillon*, 78 F.3d 1041 (6th Cir. 1996) ........................................................... 7

*Hopson v. Riverbay Corp.,* 190 F.R.D. 114 (S.D. N.Y. 1999) ....................................................... 7

*Jolly Group v. Medline Indutries, Inc.*, 435 F.3d 717 (7th Cir. 2006) .................................... 5, 19

*Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223 (7th Cir. 1984) ............................................ 1, 2

*Kotsilieris v. Chalmers,* 966 F.2d 1181 (7th Cir. 1992) ......................................................... 1, 2, 5

*Lamboy-Ortiz v. Ortiz-Velez,* 630 F.3d 228 (1st Cir. 2010) ................................................. 1, 18-19

*Matei v. Cessna Aircraft Co.*, 35 F.3d 1142 (7th Cir. 1994) ......................................................... 5

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH,* 603 F.3d 943
    (Fed. Cir. 2010) ........................................................................................................................... 7

*Moline v. Experian Information Solutions*, 2004 WL 2806333 (N.D. Ill. 2004) ......................... 19

*Mustafa v. City of Chicago*, 442 F.3d 544 (7th Cir. 2006) ........................................................... 1

*Nisenbaum v. Milwaukee County,* 333 F.3d 804 (7th Cir. 2003) ................................................... 3

*Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113 (7th Cir. 1994) .................................... 2, 5

*Pease v. Pakhoed Corp.*, 980 F.2d 995 (5th Cir. 1993) .................................................................. 1

*de la Rama v. Illinois Department of Human Services,* 541 F.3d 681 (7th Cir. 2008)................. 15

*Red Carpet Studios Div. of Source Advantage, Inc. v. Sater*, 465 F.3d 642 (6th Cir. 2006)........ 18

*Riddle & Assoc. v. Kelly,* 414 F.3d 832 (7th Cir. 2005) .................................................................. 2

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ......................................................... 1, 3, 18

*Salovaara v. Eckert,* 222 F.3d 19 (2d Cir. 2000)............................................................................ 2

*Schwartz v. Millon Air, Inc*., 341 F.3d 1220 (11th Cir. 2003) .................................................... 1, 2

*Shales v. General Chauffeurs Sales Drivers & Helpers Local Union 330*, 557 F.3d 746
    (7th Cir. 2009)........................................................................................................................ 18

*United States v. Heath*, 188 F.3d 916 (7th Cir. 1999) ................................................................. 14

*United States v. McGee*, 408 F.3d 966 (7th Cir. 2005)............................................................... 10

*United States v. Wallace*, 964 F.2d 1214 (D.C. Cir. 1992).............................................................2

*Valbert v. Pass*, 866 F.2d 237 (7th Cir. 1989) ........................................................................... 11

*Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co*., 313 F.3d 385 (7th Cir. 2002) ........ 3

## Statutes

28 U.S.C. § 1927.................................................................................................................. *passim*

42 U.S.C. § 1983...................................................................................................................18

Citing 28 U.S.C. § 1927, as well as the Court's inherent and contempt powers, Plaintiff Oscar Walden, Jr. seeks imposition of attorneys' fees and costs sanctions against the City of Chicago "and/or" its former trial counsel, Andrew Hale and Avi Kamionski. This response addresses the request for sanctions against Hale and Kamionski, personally.

## GENERAL LEGAL STANDARDS

### A. 28 U.S.C. § 1927

Title 28, United States Code, § 1927 provides for sanctions against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." As originally enacted in 1813, the purpose of this statute was "to prevent multiplicity of suits or processes, where a single suit or process might suffice …." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 759 (1980). Even in more modern times, § 1927 seeks to prevent dilatory pursuit of frivolous litigation or abusive tactics, *see Mustafa v. City of Chicago*, 442 F.3d 544, 550 (7th Cir. 2006); *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir. 1984), as opposed to operating as "a 'catch-all' provision for sanctioning objectionable conduct by counsel," *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). Because § 1927 "clearly is punitive … [it] must be construed strictly." *Knorr*, 738 F.2d at 226. Strict construction is necessary to avoid chilling counsel's legitimate zeal in representing his client. *Pease v. Pakhoed Corp.*, 980 F.2d 995, 1001 (5th Cir. 1993); *see also Lamboy-Ortiz v. Ortiz-Velez,* 630 F.3d 228, 247-48 (1st Cir. 2010).

The text of § 1927 requires the following: 1) the conduct must have been unreasonable and vexatious; 2) it must have multiplied the proceedings; and 3) any sanction cannot exceed the costs caused by the objectionable conduct. *Schwartz*, 341 F.3d at 1225. Importantly, "the statute explicitly requires that counsel act unreasonably *and* vexatiously before sanctions are warranted." *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184 (7th Cir. 1992) (emphasis original). In

view of the conjunctive terminology, "vexatious" conduct means something different than unreasonable conduct, *i.e.,* "either subjective or objective bad faith." *Id.*

Under Seventh Circuit case law it is "not always necessary" to establish subjective bad faith before imposing sanctions under § 1927.[1] *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609 (7th Cir. 2006). Section 1927 liability, however, cannot be imposed on a lawyer for ordinary negligence, *Kotsilieris,* 966 F.2d at 1184-85, *Schwartz,* 341 F.3d at 1225, or for poor legal judgment, *Salovaara v. Eckert,* 222 F.3d 19, 35 (2d Cir. 2000). Instead, to trigger § 1927 liability, a lawyer's conduct must rise to reckless indifference, *Dal Pozzo,* 463 F.3d at 614, or extreme negligence, *Kotsilieris,* 966 F.2d at 1185; *Pac. Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 120 (7th Cir. 1994). Conduct is objectively unreasonable and vexatious, and therefore sanctionable, only if counsel "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry" was unsound. *Dal Pozzo,* 463 F.3d at 614 (quoting *Riddle & Assoc. v. Kelly,* 414 F.3d 832 (7th Cir. 2005)); *see Knorr*, 738 F.3d at 226 ("[t]o be liable under section 1927, counsel must have engaged in serious and studied disregard for the orderly process of justice") (internal quotation marks omitted); *Fahey v. Creo Prods., Inc.*, 1998 WL 474114, *4 (N.D. Ill. 1998) (Castillo, J.) ("attorney's actions must generally be so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose") (internal quotation marks omitted).

Moreover, sanctions under § 1927 are not mandatory. *Corley v. Rosewood Care Ctr., Inc.,* 368 F.3d 990, 1014 (7th Cir. 2004). A court has considerable discretion in determining whether to award sanctions. *Id.*; *Kotsilieris,* 966 F.2d at 1086. Thus, while a court must give a

---

[1] The circuits have split on whether a court must find that an attorney acted in bad faith before imposing sanctions under §1927. *See United States v. Wallace*, 964 F.2d 1214, 1218-19 (D.C. Cir. 1992) (discussing circuit split). The Seventh Circuit has held that a showing of *subjective* bad faith is not required. While we recognize that a district court cannot overturn circuit-precedent, we respectfully object to a standard that does not require a showing of subjective bad faith.

sanctions request due consideration, *see, e.g., Nisenbaum v. Milwaukee County,* 333 F.3d 804, 811 (7th Cir. 2003), a district court is not *required* to impose sanctions, even when sanctionable conduct is found, *Corley,* 368 F.3d at 1014.

**B.     Inherent powers**

Federal courts also have inherent power to impose sanctions and punish contempt. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-44 (1991). Although inherent power is neither displaced nor constrained by § 1927, inherent power "must be exercised with restraint and caution" and is not preferred when other remedies are available. *Id*. at 44, 46-47; *see Dal Pozzo*, 463 F.3d at 614; *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co*., 313 F.3d 385, 391 (7th Cir. 2002). Inherent power "is not a grant of authority to do good, rectify shortcomings of the common law … or undermine the American rule on award of attorneys' fees to the prevailing party …." *Zapata*, 313 F.3d at 390-91. Rather, imposition of inherent power sanctions requires a finding that counsel's conduct "constituted or was tantamount to bad faith." *Roadway Express, Inc.,* 447 U.S. at 767; *see Chambers*, 501 U.S. at 45-46.

## ARGUMENT

The grant of a new trial does not *ipso facto* mean that sanctions are warranted. The standard for granting a new trial, and the standard for imposing sanctions under § 1927, are not coterminous. The new trial inquiry assesses how the jury was affected, *i.e.,* whether the conduct was "sufficiently prejudicial to warrant a new trial." 3/6/2012 Mem. Op. & O., Dkt. No. 328 ("Order") at 24. Sanctions, on the other hand, require examination of counsel's state of mind. Absent a showing of objective or subjective bad faith, sanctions are inappropriate.

Plaintiff argues that the conduct of the City, Hale and Kamionski was "committed 'in bad faith, vexatiously, wantonly, or for oppressive reasons." Pl. Sanct. Mot., Dkt. No. 335, at 9.

3

While emphasizing this Court's statement regarding the commission of "unethical" conduct, plaintiff fails to acknowledge that this Court explicitly found that "*there is insufficient evidence that the pattern of misconduct by the City's attorneys was intentional* …."[2] Order at 25 (emphasis added). This finding is law of the case, and yields adequate grounds for denying plaintiff's motion outright.

Moreover, the Court's order granting a new trial carefully analyzed each instance of alleged attorney misconduct that could have affected the jury and concluded that each incident, standing alone, did not require a new trial. It was only when the Court viewed the record cumulatively, under the standard applicable to motions for a new trial, that the Court found that plaintiff had been prejudiced. A different analysis is required for sanctions under § 1927 and, under that standard, an analysis of each incident precipitating the grant of a new trial reveals that defense counsel's conduct did not rise to the level required for § 1927 sanctions.

## I.     Incidents Precipitating the Grant of a New Trial.

    **A.       Distribution of unredacted confession to the jury**.   During Hale's cross-examination of plaintiff on the second day of trial, the Court admitted Defense Exhibit 15 (plaintiff's confession), and permitted it to be published. Trial Tr. ("Tr.") at 538-39. While cross-examining plaintiff about his confession, it was discovered that the exhibit, which had been properly redacted, had been miscopied insofar as only one side of a two-sided document had been copied; the Court permitted the exhibit to be retrieved. Tr. 541-42. Hale continued with the cross-examination and again attempted to publish the exhibit, but noticed that it again had been miscopied and moved on. *See* Tr. 543. About 20 transcript pages later, Hale attempted to publish the exhibit for a third time, saying he had "correct copies." Tr. 566. The Court permitted

---

[2] The Court completed the above-quoted passage with a statement that counsel had disregarded the Court's rulings and "careless[ly] present[ed] barred evidence." Order at 25. If carelessness is equated with ordinary negligence, then, under Seventh Circuit case law, sanctions should not be awarded.

distribution, and Hale commenced cross-examining about the exhibit. About six transcript pages later, the Court noticed that the exhibit had not been redacted and called a recess. Tr. 572-73. Hale immediately apologized, stating, "We sent it back to be copied just now, and that got screwed up." Tr. 573. This Court announced that the incident was "less than acceptable," instructed counsel to "take a look and be a lot more careful," and questioned why "more attention wasn't paid" to having the correct copies. Tr. 573.

In the opinion granting a new trial, the Court deemed the distribution of the unredacted confession to the jury to be the "most egregious, misstep by the City's attorneys." Order at 19. Addressing the City's third attempt to distribute the confession, the Court pronounced that it "exhibited a level of carelessness that had the potential of prejudicing Walden's case …. [T]his type of carelessness and unpreparedness on the part of the City's attorneys is inexcusable." *Id.* at 19, 20. The Court nevertheless concluded that it did not entitle plaintiff to a new trial because a *voir dire* of the jurors revealed that their exposure to the unredacted confession would not compromise their ability to decide the issues in the case. *Id.* at 20; *see* Tr. 587.

Here, we do not attempt to excuse the misstep in distributing the unredacted confession to the jury. At the same time, this Court, which witnessed the events unfold first-hand, found counsel's conduct to be careless and the result of lack of preparation. This is not the type of *scienter* necessary to impose § 1927 sanctions. *See Jolly Group v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006); *Pac. Dunlop*, 22 F.3d at 120; *Knorr*, 738 F.2d at 228-29; *see also Matei v. Cessna Aircraft Co.*, 35 F.3d 1142 (7th Cir. 1994) (affirming refusal to impose sanctions after a mistrial where district court found no bad faith).

Moreover, the record bears out that Hale did not act in bad faith, either subjectively or objectively. This is not a case in which Hale *purposefully* sought to sneak offending confession

portions to the jury. This much is evident from the fact that, when Hale first attempted to publish Exhibit 15, he did not distribute unredacted copies. What occurred is that, after the confession was recopied, counsel did not carefully review the documents before distribution to the jury. Notably, Hale did not actually copy the offending document, as he was conducting cross-examination at the time. Hale's mistake was failing to review carefully what had been handed to him in court. That is not the stuff of bad faith.

      **B.**    **Opening statement.** Kamionski delivered the City's opening statements, which covered portions of the 1952 testimony ultimately not admitted at trial. In particular, the opening statement covered the victim's non-identification of 15-20 persons; the victim's identification of plaintiff at a drug store; and plaintiff's custodial statement about his drug use and keeping company with "harlots." Order at 21. The Court sustained numerous plaintiff objections to its argumentative nature, repeatedly admonished counsel, and instructed the jury that a lawyer's opening statements were not evidence. *Id.* at 21-22. The Court also warned defense counsel about making an unsupported opening statements. *Id.* at 21. Kamionski's opening statement, however, did not violate a specific *in limine* order, since neither party filed a pretrial motion *in limine* about the 1952 testimony, so no rulings concerning the testimony had been made at the time of opening statments.[3] Moreover, the victim's prior testimony bolstering the reliability of

---

[3] In its post-trial order, the Court noted that "[u]ntil at least two weeks before trial, Walden agreed to the admission of the 1952 testimony as long as all of the testimony from the criminal trial was admitted, and even listed witnesses from the 1952 trial on his witness list." Order at 7. Although the defense, too, designated portions of the 1952 testimony prior to trial, plaintiff did not file a motion *in limine* on the subject. Tr. 10-11. On the morning of trial, plaintiff objected orally to the trial testimony, leading the Court to question why a motion *in limine* had not been filed. Tr. 11. The Court questioned 26th and California evidentiary standards in the 1950s, and warned defense counsel that any opening statement not supported by the evidence would be stricken. Tr. 14-15. After the defense filed a pleading describing the guarantees of trustworthiness of the 1952 testimony, R. 288, Tr. 15, this Court acknowledged that some of the testimony might be admitted, and directed plaintiff to lodge specific objections. Tr. 20.

her identification of Walden was barred from trial only after the plaintiff dismissed his malicious prosecution claim. *See* Tr. 745-48.

This Court's post-trial order described the defense opening statement as "entirely inappropriate," and the Court found that counsel "threw caution to the wind" by referring to the 1952 testimony without a guarantee that the testimony would be admitted. Order at 20-21. Nevertheless, pointing to the sustained objections, admonishments to counsel and jury instructions, this Court determined that the improper comments did not merit a new trial. *Id*. at 22. Kamionski's casting caution aside is a mindset more indicative of negligence and carelessness than objective or subjective bad faith.

Kamionski's opening statement also did not "unreasonably and vexatiously" *multiply* the proceedings within the meaning of § 1927 because the inappropriate comments, standing alone, did not cause the new trial. *See*, *e.g., Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH,* 603 F.3d 943, 966 (Fed. Cir. 2010) (finding that counsel's improper argument "did not improperly prolong the proceedings, and thus cannot serve as a basis for the entry of an award under section 1927"). There also is no suggestion that Kamionski, by his opening statement, deliberately sought to cause a mistrial, and for this reason as well, sanctions are inappropriate. *See Holmes v. City of Massillon*, 78 F.3d 1041, 1050 (6th Cir. 1996) (vacating sanctions order where counsel's questions during cross-examination, which resulted in mistrial, were not designed to provoke mistrial).

Moreover, even if the standards for sanctions have been met, this Court may decline to impose a monetary sanction. *See Corley,* 388 F.3d at 1014. For example, in *Hopson v. Riverbay Corp.,* 190 F.R.D. 114 (S.D. N.Y. 1999), a civil rights suit that "turned entirely on the credibility of the parties," the court granted a new trial due to defense counsel's misconduct. 190 F.R.D. at

7

117. The court, however, declined to impose sanctions, stating:

> Here, defendants' counsel's misrepresentations, the unfounded claims concerning the fact that plaintiff had offered a false alibi, and those concerning the charges that the Department of Corrections brought against plaintiff, the misstatement of the alcohol impairment law, and the misleading statements on summation, are not "entirely without color" such that they were made solely "for reasons of harassment and delay." Instead, defense counsel's statements distorted the facts or law at issue. There is a question whether these acts were the result of negligent preparation or reckless and willful conduct or lack of discipline. The Court also accepts that plaintiff's counsel's comments on summation, although not pointed, were excessive, inappropriate, and inflammatory. The Court declines to impose sanctions against defense counsel under these circumstances. In addition, the grant of a new trial will serve the purpose of sanctions against defense counsel without the deleterious impact of the sanctions themselves.

*Id.* at 123; *see also Burull v. First Nat'l Bank of Minneapolis*, 831 F.2d 788, 790 (8th Cir. 1987) (district court did not abuse its discretion in refusing to award sanctions even though the court repeatedly expressed frustration with counsel's trial tactics and techniques).

    **C.** **Cross-examination questions.** In his motion for new trial, Plaintiff cites four instances where the defense allegedly elicited improper testimony on cross-examination. R. 311.

    1. **Hale's cross-examination of plaintiff that mentioned the rape victim testified she had identified plaintiff at a drug store.** At trial, plaintiff did not object, *see* Tr. 477-78, and the Court subsequently found the questioning to have caused "minimal prejudice," given that it related to a collateral issue and was not brought up again. Order at 22-23. It cannot now be concluded that a passing mention of the identification amounted to unreasonable and vexatious conduct that multiplied the proceedings. This fact also was relevant to the malicious prosecution claim, which plaintiff only dropped later in the trial. *See* Tr. 745-748.

    2. **Kamionski's asking Lipari two sequential questions about whether the police had any other suspects.** At trial, plaintiff objected to the questions as "beyond the scope." Tr. 204-05. The Court sustained the objections, and Kamionski moved on. The Court later found any

prejudice minimal and insufficient to require a new trial. Order at 23.

In any trial, objections occur. The fact that the Court sustained "scope" objections is not fodder for sanctions. The jury was instructed that lawyer's questions were not evidence and to disregard matters for which the Court sustained objection. (R. 306, Jury Instr. at 5.). There is no reason to believe the jury did not follow the instructions. Even though questioning on barred areas "disappointed" the Court, Order at 23, it cannot be said that the two questions amounted to Kamionski "unreasonably and vexatiously" multiplying the proceedings.

**3.** **Kamionski's asking Lipari about a newspaper article that quoted Tim O'Connor.** On direct examination, Lipari repeatedly mentioned O'Connor. *See* Tr. 126, 133, 136, 149, 162. On cross-examination, Lipari volunteered that O'Connor had been "cited in the Tribune article." Tr. 215. After conferring with plaintiff's counsel, Kamionski showed Lipari a copy of the article. After colloquy that included Kamionski asking whether O'Conner had voiced intolerance for the "third degree," Tr. 215-16, plaintiff objected on grounds that the article had not been previously tendered.[4] The Court sustained the objection. Tr. 216.

It is difficult to see how counsel's conduct during Lipari's cross-examination could be considered sanctionable. Lipari's direct examination opened the door to questioning about O'Connor, and defense counsel attempted to impeach on a topic Lipari had injected into the case. That the Court sustained the objection, by itself, is not grounds for imposition of sanctions. Indeed, the unperfected impeachment attempt did not multiply the proceedings, nor was it conducted "unreasonably and vexatiously" as required by § 1927.

**D.** **Closing arguments.** Plaintiff first bemoans defendant's use of demonstratives during closing argument to suggest that plaintiff was guilty and to "assist in his repeated

---

[4] In the sanctions motion, plaintiff states that counsel read from a document not in evidence, Pl. Sanct. Mot. 3, when in fact, at trial, plaintiff objected that the article had not been tendered, Tr. 215-16.

improper references to the convicted Governor." Pl. Sanct. Mot. 3 (citing Tr. 978-79). Plaintiff, however, cites no portion of the transcript in which he objected to use of the demonstrative exhibits, and, as the Court acknowledged, Walden's guilt was relevant to the City's defense. Order at 12; Tr. 532. With respect to Hale's reference to former Governor Ryan, although plaintiff objected, Hale did not mention Ryan's conviction but instead pointed out that the plaintiff's innocence pardon was a "political decision." Tr. 979. Thus, neither the "guilty" demonstrative nor the reference to former Governor Ryan warrants sanctions.

Plaintiff next asserts, without specificity, that Hale violated *limine* orders and referred to barred evidence. Pl. Sanct. Mot. 3-4. Plaintiff's failure to develop this argument amounts to waiver. *See*, *e.g.*, *United States v. McGee*, 408 F.3d 966, 982 n.2 (7th Cir. 2005). Nevertheless, we shall examine the transcript passages cited in this Court's post-trial opinion to determine if any of the conduct rises to the level required by § 1927:

1.  A major issue at trial related to how plaintiff sustained scars on his fingers. The record contains repeated references to the victim biting plaintiff's fingers. For example, on cross-examination, plaintiff admitted that police asked whether the victim had injured him and that he responded she had bit fingers on his left hand. Tr. 323-24, 594. The victim's prior testimony, including portions introduced by plaintiff, also referred to her having bitten plaintiff's fingers. Tr. 765, 806. Therefore, in closing argument, Hale turned to the topic and, without objection, described it as "the most important issue in the case." Tr. 921-22. After Hale underscored that plaintiff maintained that officer Joseph Faculak did it, he said that the victim "Elsie Anderson says she did." Tr. 922. At that point, plaintiff's attorneys objected, claiming that there is "no such testimony." *Id.* The Court sustained the objection.

Over the course of the next several pages of transcript, Hale then clarified his remark by detailing the evidence relating to how plaintiff sustained the scars, including the victim's testimony that "she bit the first two fingers on [plaintiff's] left hand," and that she said, "I bit as hard as I could." Tr. 922-27. Hale's detailed rendition of the evidence did not elicit an objection. In view of the record, plaintiff's "no such testimony" objection lacked merit and cannot provide the basis for sanctions. Even if the trial testimony recounted by Hale was not verbatim, "counsel is entitled to make arguments based on reasonable inferences from the evidence during closing argument." *Valbert v. Pass*, 866 F.2d 237, 242 (7th Cir. 1989). Certainly, Hale's argument was supported by the evidence and amounted to a reasonable inference.

2.     During closing argument, Hale started to discuss the plaintiff's skipping a section of the statement (dealing with the victim's watch) on direct examination. Tr. 937. Plaintiff interposed a speaking objection, explaining that they were not trying to avoid the section but skipped it for another reason. Tr. 937. Hale promptly withdrew the argument and turned to another topic. It cannot be said that Hale acted in bad faith. Once plaintiff aired the reason for his objection, Hale promptly withdrew his statement. Moreover, Hale's conduct -- a withdrawn statement in a heated closing argument that did not prejudice the plaintiff -- does not amount to an unreasonable and vexatious attempt to multiply the proceedings.

3.     Another issue at trial concerned a hole in plaintiff's coat pocket. In his statement to the police, plaintiff admitted that he took a watch from the victim, put it in his coat, but lost it because of a hole in his pocket. When Hale asserted in closing argument that police had confirmed that plaintiff had a hole in his overcoat, plaintiff objected. Tr. 938-39. The Court did not sustain the objection, but reminded jurors that they were the arbitrator of the facts.

The record yields ample support for Hale's argument. On cross-examination, plaintiff acknowledged "there was some conversation" about the hole in his pocket, but professed he could not recall the matter. Tr. 535. Prior testimony of Captain William Ryan and Officer Edward Walsh both included revelations about how police examined plaintiff's overcoat, discovered a hole in the pocket and confirmed that fact with plaintiff. Tr. 700, 716. The victim also testified that police showed her the hole in the pocket of plaintiff's coat. Tr. 782-83. Like Hale's argument concerning the scar on plaintiff's finger, Hale's argument concerning the hole in plaintiff's pocket cannot provide the basis for sanctions.

4. Hale also argued during closing that "[t]here were no kicks to the shin . . . On Friday he said nothing physical happened." Plaintiff objected, stating "[t]hat's a complete misstatement of the testimony," and the Court instructed the jury that they would have to recollect the testimony. Tr. 947.

The record again belies plaintiff's contention. During plaintiff's cross-examination in this case, the defense established that plaintiff had testified at his 1952 trial that he "was not struck on the 11th. It was on the 12th"; that he was "[n]o more than pulled" on the 11th (in response to a question of whether he had been struck on the 11th); and that it was "[n]othing physical." Tr. 506-07. Just because plaintiff lodged a "misstates the evidence" objection does not mean it is so. While plaintiff so objected at trial, used it in support of his new trial and sanctions motions, the record does not support plaintiff's position. Hale acted within the bounds of proper closing argument. Sanctions based on Hale's closing argument are not appropriate.

## II.  Matters Unrelated to New Trial Grant.

### A.  Expression of Frustration.  According to Plaintiff, Hale and Kamionski engaged

in "direct affronts to the Court, in front of the jury, including making faces and demeaning

comments (Tr. 198-201)." Pl. Sanct. Mot. 3. The record shows the following: During the cross-examination of Lipari, Kamionski attempted to ask Lipari questions about the identity of witnesses at the 1952 criminal trial. Lipari responded that he believed he may have only seen an abstract of the transcript. When Kamionski attempted to show Lipari the trial transcript, plaintiff objected. The Court sustained the objection, and denied requests for a side bar. Tr. 197-98. At that point, the Court called a recess. The Court then expressed its displeasure with Hale and Kamionski, and *sua sponte* raised the subject of contempt. Tr. 198-99. The Court, however, did not impose a contempt citation.

> At the end of the day, Hale and Kamionski apologized to the Court:

> MR. HALE: Earlier I wanted to say that I let my frustration get the better of me, and I apologize to the Court for it. I didn't mean any disrespect by it. It was a spontaneous reaction, I shouldn't have done it, and I apologize for it.

> THE COURT: I accept your apology, Mr. Hale.

> MR. KAMIONSKI: By the same token, your Honor, I didn't mean my comment as any sort of disrespect.

> THE COURT: Okay. That's fine. We'll just move on.

Tr. 297-98.

This Court did not directly rely on this matter in granting a new trial. *See* Order at 18 n.5. There also has been no showing that counsel's conduct preceding the Court's comments had any affect on the jury. Accordingly, the sequence cannot be said to have multiplied the proceedings as required under § 1927. Likewise, the Court could have entered a contempt finding at the time, but did not. This was a matter for the Court, raised by the Court, and resolved by the Court during trial. It should not now be a backdoor way to compensate plainitff's counsel.

**B.     Post-verdict disclosure of George Ryan's deposition.** Plaintiff complains that counsel "plant[ed] post-verdict stories with the media about former Governor George Ryan's

depositions in this case" and failed to redact a portion of Ryan's deposition. Pl. Sanct. Mot. 4. Defendant's post-trial motion response addressed the failure to redact portions of the deposition and demonstrates that inclusion of material covered by the protective order was inadvertent. R. 320; attached hereto as Exhibit 1. Moreover, the disclosures occurred *after* the verdict and so could not have affected the proceedings in the sense of necessitating a new trial and thus multiplying the proceedings.

## III.   Other Cases

Plaintiff maintains that "Hale and Kamionski, and attorneys working for them have engaged in documented misconduct in numerous other cases …." Pl. Sanct. Mot. 4. This Court obviously is not acting as a disciplinary panel to determine whether Hale and Kamionski violated the professional responsibility rules in other cases. They did not. The principal question here is whether either Hale or Kamionski "unreasonably and vexatiously" multiplied the proceedings in *this* case. *See* 28 U.S.C. § 1927. What occurred in other cases has little or no bearing on this issue.

Even if other cases could be considered under Federal Rule of Evidence 404(b), plaintiff has not satisfied the standards for admissibility. *See, e.g., United States v. Heath*, 188 F.3d 916, 921-22 (7th Cir. 1999) (proponent of other acts evidence must show that evidence is sufficient to support finding that alleged similar act was committed). Significantly, *in none of the other cases, did the court sanction Hale or Kamionski, or enter any findings that either had acted in bad faith.* Hale and Kamionski also were not the trial attorneys or authors of the disputed pleading in some of the other cases referenced by plaintiff. Given that "liability under § 1927 is direct, not vicarious," *FM Indus., Inc. v. Citicorp Credit Serv., Inc.*, 614 F.3d 335, 340 (7th Cir. 2010), those cases cannot form the basis for § 1927 sanctions here. *See, e.g., Claiborne v. Wisdom*, 414

14

F.3d 715, 722-24 (7th Cir. 2005) (firm employing sanctioned attorney not liable for § 1927 sanctions imposed against attorney).

   A.   ***Venson v. Altarmirano*, 08 C 6682 (N.D. Ill.).**   While it is true that this Court expressed displeasure with Shneur Nathan, a Hale & Associates attorney, during the *Venson* trial, plaintiff neglects to inform this Court that Venson's post-trial motion for sanctions was denied. *Venson*, Dkt. No. 142, attached hereto as Exhibit 2. Moreover, neither Hale nor Kamionski tried *Venson*. Because § 1927 provides only for direct, and not vicarious liability, *Venson* lacks probative value here.

   B.   ***Nelson v. Lis*, 09 C 883 (N.D. Ill.).**   Kamionski was one of the defense attorneys in *Nelson*; Hale did not try the case. A new trial was granted in *Nelson* because the jury was given an erroneous jury instruction, suggested by the defense. In its opinion granting a new trial, the court expressed disappointment over the failure of counsels – plural – and the court to consult the Seventh Circuit instructions. Pl. Sanct. Mot., Ex. D. A legal mistake in a jury instruction, however, is not the type of conduct that gives rise to sanctions, nor is it similar enough to the conduct identified by plaintiff in this case to be considered other acts evidence. Moreover, plaintiff fails to inform the Court that Nelson also filed a post-trial motion for sanctions, which was denied. *Nelson*, Dkt. No. 164.

   C.   ***McGee v. City of Chicago*, 08 L 3503 (Cir. Ct. Cook Cty).**   Plaintiff's allegation about this case reads "*McGhee [sic] v. City of Chicago*, 08 L 3503 (same)." Plaintiff has not attached a transcript excerpt or court order; hence, the issue is waived. *de la Rama v. Ill. Dep't of Human Servs.,* 541 F.3d 681, 688 (7th Cir. 2008) ("Unsupported and undeveloped arguments are waived."). Furthermore, plaintiff does not, and cannot contend, that the circuit court judge presiding over *McGee* found misconduct or sanctioned counsel.

**D.** ***Peterson v. City of Chicago*, 09 C 1839 (N.D. Ill.).** In an effort to render a jury unnecessary in this civil rights case, plaintiff dropped his damages claim to $20, but reserved the right to seek attorneys' fees and costs. Defendants filed a pleading seeking to preserve their right to a jury. The pleading, *Peterson*, Dkt. No. 61, was signed and filed by Monifa K. Gray, and contained the names of Hale and Kamionski in the counsel-listing section.

In his opinion, Judge Shadur addressed the City's policy of not settling small civil rights claims, soundly criticized the defendant's legal argument, questioned the reasonableness of the City's policy, and *sua sponte* mentioned § 1927. *Peterson*, Dkt. No. 64, attached hereto as Exhibit 3. The court, however, did not impose sanctions. While reasonable minds can disagree over the wisdom of the City's "no settlement" policy, a position taken on a client's behalf in a pleading not prepared or signed by Hale or Kamionski in a case before another district judge should not be the basis for sanctions here. The City's position in *Peterson* was not taken in bad faith, and respectfully, the issue of whether sanctions were warranted in *Peterson* was resolved by the district judge in that case.

**E.** ***Leon v. City of Chicago*, No. 09 C 4190 (N.D. Ill.).** Hale, Kamionski and S. Ann Walls were among the attorneys who filed appearances in the *Leon* case. In ruling on summary judgment motions, Judge Hibbler criticized language in a brief prepared and signed by Walls and issued a rule to show cause. *Leon*, Dkt. No. 84. Walls filed a written response in which she explained that she had not acted in bad faith. *Leon*, Dkt. No. 88. Judge Hibbler entertained the rule to show cause in open court and discharged it. *See Leon*, 10/21/11 Tr., attached hereto as Exhibit 4. Judge Hibbler, who had familiarity with the case and was in a position to assess counsel's credibility, found "any errors in [the] filing were not intentional" and cautioned Walls to be more careful in zealously advocating on behalf of clients. *Id.* at 3. Again, language used in

a brief signed by another attorney in a case before another district judge (who ultimately resolved the issue) should not be the basis for sanctions against Hale or Kamionski here.

**F.** *Anderson v. City of Chicago*, **09 C 2311 (N.D. Ill.).** Plaintiff alleges that counsel used a City database to disqualify an African-American juror during the *Anderson* trial. This allegation is offensive. The juror's race has nothing to do with the disqualification. Plaintiff's motion also does not explain how counsel did anything wrongful and attaches no transcript or court ruling. Plaintiff's undeveloped contention should be deemed waived.

Alternatively, we provide a bit more background: Hale was one of the defense attorneys in *Anderson*. During *voir dire*, a juror denied ever having been arrested or convicted. Counsel suspected the juror may not have answered truthfully. A check on the CLEAR database confirmed counsel's suspicion -- the juror had been arrested eight times. *See Anderson*, Dkt. No. 136, attached hereto as Exhibit 5. The court ultimately dismissed the juror -- a ruling that Anderson did not contest. In a minute order denying Anderson's post-trial motion, the court declined to address misconduct allegations against defense counsel on grounds that plaintiff was not prejudiced. *Id.* The court also found that Anderson failed to explain how the conduct amounted to a violation of the professional rules of conduct. *Id.*

**G.** *Jimenez v. City of Chicago,* **09 C 8081 (N.D. Ill.).** Plaintiff alleges, without any evidentiary support whatsoever, that counsel surreptitiously obtained grand jury testimony without producing it to opposing counsel and used it to frame questions at a deposition. Pl. Sanct. Mot. 5. Once again, plaintiff attaches no transcript or court ruling to support his allegation and so has waived this point. Subject to the waiver objection, we note that *Jimenez* involved a jury trial before Judge Kennelly that resulted in a $25 million verdict for Jimenez. Hale and Kamionski represented defendants. During the pendency of the case, Jimenez did not raise the

discovery violation now identified by plaintiff. A non-raised discovery violation allegation in a case before a different district court should not provide grounds for sanctions in this case.

## IV.    The Requested Attorneys' Fees Amount is Unjustified and Excessive.

No sanctions are warranted against Hale or Kamionski. Should this Court take a different view, plaintiff is not entitled to $327,255. Plaintiff brought his action under 42 U.S.C. § 1983 and, absent his claims of misconduct against defense counsel, would have to be a "prevailing party" to recover any fee whatsoever. *See* 42 U.S.C. § 1988(b). Although plaintiff has secured a new trial, plaintiff has not "prevailed" in this litigation. *See Hanrahan v. Hampton,* 446 U.S. 754 (1980) (per curiam). Plaintiff therefore places the cart well before the horse in demanding the full value of his fees and costs for taking this case to trial. This is not to say that § 1983 defense lawyers are exempt from § 1927, *see Roadway Express*, 447 U.S. at 756-57 (examining relationship between § 1983 and § 1927), but any sanction under § 1927 must be limited to *excess* costs. *See* 28 U.S.C. § 1927. In this case, unless and until plaintiff prevails in this litigation any fees resulting from the trial cannot be said to be "excess."

Moreover, any sanction against Hale and Kamionski, personally, should be limited to an amount necessary for deterence. Although *Shales v. Gen. Chauffeurs Sales Drivers & Helpers Local Union No. 330*, 557 F.3d 746 749-50 (7th Cir. 2009), held that § 1927 is a fee-shifting statute permitting compensatory damages for tortious bad faith conduct (and Hale and Kamionski did not act in bad faith before this Court), not all courts have viewed § 1927 as compensatory. For example, in *Red Carpet Studios Div. of Source Advantage, Inc. v. Sater*, 465 F.3d 642, 647 (6th Cir. 2006), the court of appeals observed that § 1927 or inherent power sanctions are punitive and refused to overturn the district court's sanction award against defendant even though the award did not fully compensate plaintiff. Similarly, in *Lamboy-Ortiz,*

18

the First Circuit cautioned that, although § 1927 is both compensatory and deterrent in nature, "any … compensatory sanction" must be carefully crafted to avoid dampening zealous advocacy. 620 F.3d at 247-48. Applying that reasoning, the *Lamboy-Ortiz* court reduced an award of approximately $65,000 against plaintiff's counsel (based on counsel's repeatedly ignoring evidentiary rulings, asking barred questions, refusing to leave a sidebar, and making blatant evidentiary misrepresentations) to $5,000. *Id*. at 248-50.

   In addition, the fees requested here -- over $300,000 -- are grossly excessive. *See, e.g.,* *Jolly Group*, 435 F.3d at 717 (refusing to increase sanction to $30,000); *Kotsilieris*, 966 F.2d 1181 (reducing $5,546.25 award to $1,000); *Moline v. Experian Info. Solutions*, 2004 WL 2806333, at *1 (N.D. Ill. 2004) (Castillo, J.) ($30,000 sanction unlikely to be approved). At the outset, John Stainthrop and G. Flint Taylor provide no justification for their hourly rates of $525 and $575 per hour, respectively, which are  more than twice the "average" hourly rate for defense counsel ($220 per hour). *See* Pl. Sanct. Mot. 6-7. Furthermore, the $145,687.75 in "trial preparation" fees is not justified because: 1) they are not fees recoverable under § 1927, *see Bat v. A.G. Edwards & Sons, Inc.*, 2007 WL 2320539, at *3 (D. Colo. 2007) ("counsel's trial preparation time was not lost in this relevant sense, since the work done during that time will continue to be germane to any retrial of this matter"); *Dowe v. Nat'l R.R. Passenger*, 2004 WL 1393603, at *2 (N.D. Ill.) (pre-trial preparation "was not wasted, as that work would have equally benefited plaintiffs at a retrial if one had occurred" and so is not recoverable under § 1927); and 2) the amount appears exorbitant given this Court's finding that both parties failed to adequately prepare for trial.

## CONCLUSION

   Hale & Associates and plaintiff's counsel have squared off at trial several times in the

past, and oppose each other in other involved litigation that has not yet gone to trial. By the present motion, and the expressions of dismay over the City's continued use of Hale & Associates, plaintiff's counsel seeks to undermine the attorney-client relationship between the City and Hale & Associates. But it is not for the People's Law Office to dictate the City's choice of counsel. Further, the issue now before the Court is narrow – did Hale or Kaminski act in bad faith?  Because the Court has already concluded "there is insufficient evidence that the pattern of misconduct by the City's attorneys was intentional," Order at 25, plaintiff's motion for sanctions should be denied.

<div style="margin-left:40%;">

Respectfully submitted,

/s/ Marc W. Martin_____

/s/Theodore T. Poulos_____

</div>

THEODORE POULOS
Cotsirilos, Tighe, Streicker, Poulos & Campbell, Ltd.
33 N. Dearborn St., Suite 600
Chicago, IL 60602
(312) 263-0345

WILLIAM J. MARTIN
William J. Martin Ltd.
1011 Lake St., Suite 314
Oak Park, IL 60301
(708) 848-2100

MARC W. MARTIN
Marc Martin, Ltd.
53 W. Jackson Blvd., Suite 1420
Chicago, IL 60604
(312) 408-1111
*Attorneys for Andrew Hale and Avi Kamionski*